## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSEPH SAM**                                                    **CIVIL ACTION**

**VERSUS**                                                       **NO.  10-0703**

**STATE OF LOUISIANA**                                           **SECTION "I"(2)**


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Joseph Sam, is incarcerated in the David Wade Correctional Center in Homer, Louisiana.[2]  Sam was charged by bill of information in Jefferson Parish on March 26, 2002, with distribution of cocaine.[3]  The bill was later amended on April 17, 2003, to add a co-defendant, Kraig V. Marks, and to revise the charged offense to possession with intent to distribute cocaine.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> On March 7, 2002, between 10:15 and 10:30 a.m., Detective Robert Gerdes of the Jefferson Parish Sheriff's Office received information from a "confidential informant" that a wheelchair-bound double-amputee named "Kraig" was distributing cocaine from Room 101 at the Days Inn Motel at 3750 Westbank Expressway in Harvey.  Further, the informant told Detective Gerdes that a black man known as "Kid," who drives a white Lincoln Continental, would be delivering cocaine to Kraig at the motel between 11:15 and 11:45 a.m. that morning.  Detective Gerdes related this information to Sergeant Bruce Harrison of the Jefferson Parish Sheriff's Office.
>
> Sergeant Harrison testified that Detective Gerdes told him that a white male with long black hair named "Kraig," who was a "double amputee in his legs," was distributing cocaine from Room 101 at the Days Inn. Sergeant Harrison and three other officers established surveillance of the motel around 11:00 a.m. on March 7, 2002. Sergeant Harrison testified that he observed a white male, who was a double amputee, coming out of Room 101 in a wheelchair.  The man was accompanied by a female and another white male. The three individuals moved clothing and other items from Room 101 to 103.
>
> At approximately 11:30 a.m., the officers spotted a white Lincoln Continental entering the motel's parking lot. Sergeant Harrison pulled his vehicle in front of defendant's car and another JPSO officer blocked defendant's vehicle from the rear.  Defendant placed his vehicle in reverse, but stopped when he

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 12, Bill of Information, 3/26/02.

[4]Id. (handwritten notation).

realized another police vehicle had blocked his vehicle. Sergeant Harrison and the other officers ran to defendant's vehicle with their weapons drawn and verbally identified themselves as police.

Sergeant Harrison, with his badge displayed, tried to open defendant's vehicle's driver's side door, which was locked. When Sergeant Harrison ordered defendant to open the door, defendant reached for his right front pocket. Sergeant Harrison ordered defendant to stop reaching toward his pocket and unlock the vehicle's doors. Defendant complied with both orders and Sergeant Harrison removed defendant from the vehicle. Sergeant Harrison placed defendant face-down on the ground and patted defendant's right front pocket to check for weapons. As Sergeant Harrison patted defendant's pocket, he felt crack cocaine and placed defendant under arrest. Thereafter, he retrieved four plastic bags, two clear bags that contained a "chunky" white powder and two amber bags that contained large off-white "chunks" from defendant's right front pocket.

At trial, Charles Krone, who was accepted as an expert in forensic science, testified that the substances inside of the four bags seized from defendant tested positive for cocaine. The two clear bags contained 6.44 grams of cocaine hydrochloride. The two amber bags contained 5.53 grams of base cocaine, which is commonly referred to as crack cocaine.

Sergeant Harrison testified that he had been a police officer for twenty years, with eighteen of those years in narcotics enforcement. Sergeant Harrison, was accepted, without objection, as an expert in the field of use, packaging, distribution, and value of narcotics. According to Sergeant Harrison, the handling of crack cocaine was part of that expertise. Further, Sergeant Harrison testified that he had been qualified as a narcotics expert over one hundred times in Orleans Parish and in every section in the Twenty-Fourth Judicial District Court for Jefferson Parish.

At trial, Sergeant Harrison opined that defendant intended to distribute the cocaine that was in his possession because he had two different types of drugs in four individual packets that each weighed approximately the same amount. Further, the crack, which was broken into smaller pieces, appeared to be ready for retail distribution. According to Lieutenant Harrison, twelve grams of cocaine, which is the amount that the defendant was holding, contains between 60 and 120 individual portions. Lieutenant Harrison stated that, in his estimation, one person could not consume the amount of crack cocaine that defendant was holding in one or two days, much less both the powdered and crack cocaine. Lieutenant Harrison also testified that the fact defendant was not carrying a pipe to smoke the crack or a straw to inhale the powder was inconsistent with possession for personal use. Lieutenant Harrison acknowledged that defendant was not in possession of any money or weapons.

At trial, defendant testified that he was going to the motel to rent a room to use drugs, not to deliver them. Defendant testified, at the suppression hearing,

that, as soon as he pulled into the motel's parking lot, a van blocked him in the front and the police "bum rushed" his car. He instinctively put the vehicle in reverse, which automatically locked the car's doors.

According to defendant, after he stopped, ten police officers ran up to the car, yelled at him, beat on the vehicle's glass with their guns, and shot "some to the window." Defendant said that, initially, he was in shock but, when he realized what had happened, he unlocked the vehicle's doors. Sergeant Harrison grabbed him and slammed him on the ground. He said that the other officers began kicking him in his face and chin. Defendant said that Sergeant Harrison went directly into his pocket and seized the crack cocaine. Defendant admitted that he had several prior convictions.

According to defendant, who was accepted as an expert in the field of cocaine consumption habits by cocaine addicts, the amount of cocaine seized from him would not be inconsistent with personal use. Defendant explained that, as in other retail markets, one obtains a better deal on drugs by buying in larger amounts. Defendant said that normally a single rock costs $20. When a user purchases an "eight ball," the user can "cut" ten rocks off of an "eight ball." He admitted that he paid $100 for each of the "eight ball" bags, which, in his estimation, equated to approximately half price per rock. Defendant did admit that even a drug user with a severe addiction would be unable to consume this amount of cocaine in two days.

State v. Sam, 905 So.2d 379, 381-383 (La. App. 5th Cir. 2005); State Record Volume 11 of 12, Louisiana Fifth Circuit Opinion, 05-KA-88, pp. 3-6, May 31, 2005.

Prior to trial, Sam's counsel filed a motion to suppress the evidence and statements, alleging that the arrest was illegal and the search warrant was issued without sufficient probable cause.[5]  After hearings began on the motion, counsel was ordered to file a supporting memorandum in which he made three arguments:[6] (1) Sergeant Harrison exceeded the permissible boundaries of "pat down for weapons" and acted without

---

[5]St. Rec. Vol. 1 of 12, Motion to Suppress, 4/2/02.

[6]St. Rec. Vol. 1 of 12, Hearing Minutes, 8/7/02; Hearing Minutes, 12/5/02; Minute Entry, 2/6/03; Memorandum in Support of Motion to Suppress, 2/12/03; St. Rec. Vol. 8 of 12, Hearing Transcript, 8/7/02; Hearing Transcript, 12/5/02.

probable cause as required by <u>Terry v. Ohio</u>, 392 U.S. 1 (1968).[7] (2) Sergeant Harrison did not have probable cause to arrest Sam because the arrest flowed from the illegal search and seizure of the cocaine from his pocket. (3) Sergeant Harrison did not make a valid search incident to the arrest because the arrest resulted from the illegal search and seizure.  The state trial court orally denied the motion to suppress in open court on April 10, 2003.[8]

Sam filed a pro se writ application in the Louisiana Fifth Circuit Court of Appeal seeking review of the denial of the motion.[9]  The court denied the writ stating, "Relator has an adequate remedy on appeal, if necessary."[10]

Sam thereafter filed a pro se writ application in the Louisiana Supreme Court asserting only two grounds for relief:[11] (1) The information received from the confidential informant was not sufficient to establish probable cause or reasonable suspicion for an investigatory stop and detention. (2) The search and seizure of items from his pocket violated the Fourth and Fourteenth Amendments and <u>Terry v. Ohio</u>.  The

---

[7]In <u>Terry</u>, the United States Supreme Court held that an officer may stop an individual when he suspects that the person is committing, has committed, or is about to commit a crime to determine the person's identity and an explanation for his actions.

[8]St. Rec. Vol. 1 of 6, Hearing Minutes, 4/10/03; St. Rec. Vol. 10 of 12, Hearing Transcript, 4/10/03.

[9]St. Rec. Vol. 1 of 12, Notice of Intent to Seek Remedial Writ, 6/5/03; Trial Court Order, 6/18/03.

[10]St. Rec. Vol. 1 of 12, 5th Cir. Order, 03-KH-726, 7/9/03.

[11]St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 03-KH-2085, 7/25/03; St. Rec. Vol. 1 of 12, La. S. Ct. Letter, 2003-KH-2085, 7/25/03 (postmarked 7/21/03); Notice of Intent, 7/21/03.

Louisiana Supreme Court denied the writ application without reasons on September 5, 2003.[12]  Shortly thereafter, on September 9, 2003, the State chose to sever the trials of each defendant.[13]

On March 17, 2004, co-defendant Marks entered a guilty plea to possession with intent to distribute cocaine and received a five-year sentence.[14]

After waiver of his right to jury trial, Sam was tried before the state trial judge on April 28, 2004, and was found guilty as charged.[15]  On May 6, 2004, the state trial court sentenced Sam to 15 years at hard labor.[16]

Upon consideration of the State's multiple offender bill at hearings held on August 19 and September 23, 2004, the state trial court found Sam to be a third felony offender.[17]

---

[12]State v. Sam, 852 So.2d 1026 (La. 2003); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2003-KH-2085, 9/5/03.

[13]St. Rec. Vol.1 of 12, Minute Entry, 9/9/03; St. Rec. Vol. 8 of 12, Hearing Transcript, 9/9/03. On November 4, 2003, Sam filed a petition in this court pursuant to 28 U.S.C. § 2241 in which he raised pretrial challenges alleging unlawful stop, search and seizure, malicious prosecution and denial of a speedy trial. Civ. Action No. 03-3122"I"(2), Rec. Doc. Nos. 1, 7, 10.  The petition was dismissed without prejudice for failure to exhaust state court remedies on March 19, 2004.  Civ. Action No. 03-3122"I"(2), Rec. Doc. Nos. 27, 28.

[14]St. Rec. Vol. 1 of 12, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 3/17/04; Plea Minutes (Marks), 3/17/04.

[15]St. Rec. Vol. 1of 12, Trial Minutes, 4/28/04; St. Rec. Vol. 9 of 12, Trial Transcript, 4/28/04.

[16]St. Rec. Vol. 1 of 12, Sentencing Minutes, 5/6/04; St. Rec. Vol. 9 of 12, Sentencing Transcript, 5/6/04.

[17]St. Rec. Vol. 1 of 12, Sentencing Minutes, 5/6/04; Multiple Bill, 5/5/04; Hearing Minutes, 8/19/04; Hearing Minutes, 9/23/04; St. Rec. Vol. 9 of 12, Multiple Bill Hearing Transcript, 8/19/04; Multiple Bill Hearing Transcript, 9/23/04.

The court vacated the original sentence and sentenced Sam to 25 years in prison without benefit of parole, probation or suspension of sentence and without good-time eligibility.

On direct appeal to the Louisiana Fifth Circuit, Sam's counsel asserted two grounds for relief:[18] (1) The trial court erred in denying the motion to suppress because Sergeant Harrison's testimony was inconsistent and not worthy of credit and the seizure of cocaine from Sam's pocket violated the "plain feel" exception because Sergeant Harrison had to squeeze the bag to identify the contraband. (2) The trial court erred in restricting Sam's good-time eligibility.  The court affirmed the conviction, finding no merit in Sam's first claim, but amended Sam's sentence to remove the good-time eligibility restriction.[19]  Counsel's application for rehearing was refused on July 8, 2005.[20]

_____

[18]St. Rec. Vol. 9 of 12, Appeal Brief, 05-KA-88, 2/22/05; State v. Sam, 905 So.2d at 383, 386; St. Rec. Vol. 11 of 12, 5th Cir. Opinion, 05-KA-88, 5/31/05.

[19]State v. Sam, 905 So.2d at 386, 387; St. Rec. Vol. 11 of 12, 5th Cir. Opinion, 05-KA-88, 5/31/05.  The appellate court also ordered the state trial court to amend the commitment order and minute entry to reflect that the correct charge was possession with intent to distribute.

[20]St. Rec. Vol. 9 of 12, Application for Rehearing, 05-KA-88, 6/14/05; 5th Cir. Notice, 05-KA-88, 7/8/05.

On August 9, 2005, Sam's counsel filed a timely[21] writ application with the Louisiana Supreme Court seeking review of three claims:[22] (1) The appellate court erred in considering evidence from the trial when evaluating the denial of the motion to suppress evidence seized without a warrant. (2) The appellate court erred in finding no inconsistencies in Sergeant Harrison's testimony. (3) The appellate court erred in affirming the denial of the motion to suppress because the pat-down search had exceeded the scope allowed in Terry v. Ohio. The Louisiana Supreme Court denied the application without reasons on March 10, 2006.[23]

Sam's conviction became final 90 days later, on June 8, 2006, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[21]Pursuant to La. Code Crim. P. art. 922 and La. S. Ct. R. X§5, petitioner had 30 days from the denial of the application for rehearing to file a writ application in, or mail one to, the Louisiana Supreme Court. Counsel's subsequent writ application had a postmark of August 8, 2005, which was thirty days after the refusal of the rehearing. See St. Rec. Vol. 1 of 12, La. S. Ct. Letter, 2005-K-2100, 8/10/00 (indicating file date of 8/9/05 and postmark of 8/8/05); St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 05-K-2100, 8/9/05 (postmarked 8/8/05); Causey v. Cain, 450 F.3d 601 (5th Cir. 2006).

[22]St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 05-K-2100, 8/9/05 (postmarked 8/8/05).

[23]State v. Sam, 925 So.2d 510 (La. 2006); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2005-K-2100, 3/10/06.

On March 9, 2007, Sam filed a motion in the state trial court seeking leave to amend his application for post-conviction relief.[24]  The court denied the motion, finding that the record did not contain any application that could be amended.[25]  As instructed, on March 19, 2007, Sam submitted an application, which the court filed on March 28, 2007, asserting two grounds for relief:[26]  He was denied effective assistance of counsel because counsel failed (a) to raise pretrial malicious prosecution and to argue that the State offered no factual basis on which to rely on information received from confidential informants, (b) to object to the State's introduction of involuntary statements from confidential informants, (c) to object to the State's introduction of extorted and coerced statements from confidential informants, (d) to call as a defense witness the driver of the car who could testify as to the coercion used to extort information from confidential informants, (e) to address in open court that this was a vindictive prosecution because he exercised his right to sue the prosecutor, (f) to address in open court the selective nature of the prosecution against him, and (g) to supplement the record on appeal with his pro se writ application challenging the credibility of confidential informants; (2) He was denied due process and equal protection because he was denied a full hearing on the

---

[24]St. Rec. Vol. 2 of 12, Motion to Amend Post-Conviction Relief, 3/9/07.

[25]St. Rec. Vol. 2 of 12, Trial Court Order, 3/14/07.

[26]St. Rec. Vol. 2 of 12, Uniform Application for Post-Conviction Relief, 3/28/07 (signed 3/19/07).

suppression of the evidence after each stage of the criminal proceedings where the state trial court did not consider the false testimony of the officer and unreliable and coerced statements from the confidential informant.

On May 4, 2007, Sam moved to compel the State to file an opposition to his application, which was denied by the court on May 30, 2007.[27]  Sam sought review of this order in the Louisiana Fifth Circuit, and, on June 21, 2007, the court denied the application, finding no error in the trial court's ruling and also finding it moot because the trial court had by that time ruled on the application.[28]

In its ruling issued June 1, 2007, the state trial court denied relief on the two post-conviction claims.  The court held that subparts a, e and f of the first claim, raising ineffective assistance of counsel, were actually repetitive challenges to the motion to suppress already addressed by the trial court and the appellate court.  The court dismissed these subparts pursuant to La. Code Crim. P. arts. 930.4(B) and (C).  The court found that subpart b was actually a challenge to the introduction of evidence, which should have been raised previously and which was now procedurally barred under La. Code Crim. P. art. 930.4.  The court also noted that the appellate court had already held that the information from the confidential informant was reliable.  The court denied as meritless the remaining ineffective counsel claims.  As for the second claim, alleging denial of due

---

[27]St. Rec. Vol. 2 of 12, Motion to Compel Opposition, 5/4/07; Trial Court Order, 5/30/07.

[28]St. Rec. Vol. 2 of 12, 5th Cir. Order, 07-KH-372, 6/21/07.

process and equal protection, the court found this to be repetitive of Sam's challenges to the denial of the motion to suppress and declined to revisit the claim already addressed by the trial court and the appellate court.

Thereafter, on July 23, 2007, the state trial court denied as moot Sam's motion demanding a ruling on his application for post-conviction relief.[29]  On July 26, 2007, the Louisiana Fifth Circuit denied a writ application filed by Sam seeking repetitive relief with regard to the State's failure to file an opposition.[30]

Over the next month, Sam filed two notices of intent to seek review of the trial court's June 1, 2007, denial of his application for post-conviction relief.[31]  The state trial court declined to set a return date, finding that the notices were untimely filed beyond 30 days after its ruling.[32]

In the meantime, on August 30, 2007, Sam filed a writ application with the Louisiana Fifth Circuit seeking review of the trial court's June 1, 2007, ruling.[33]  While

---

[29]St. Rec. Vol. 2 of 12, Application for Writ of Mandamus, 7/17/07; Trial Court Order, 7/23/07.

[30]St. Rec. Vol. 2 of 12, 5th Cir. Order, 07-KH-536, 7/26/07.

[31]St. Rec. Vol. 2 of 12, Notice of Intent to Apply for Writs, 8/8/07.  The record does not appear to contain a copy of the second notice referenced in the trial court's August 4, 2007, order.

[32]St. Rec. Vol. 2 of 12, Trial Court Order, 8/16/07; St. Rec. Vol. 3 of 12, Trial Court Order, 9/4/07.

[33]The record does not contain a file stamped copy of this writ application.  *See* St. Rec. Vol. 3 of 12, Copy of 5th Cir. Writ No. 07-KH-662.  The filing date appears on the face of the court's order and has been confirmed by a member of the court's staff with the office of the clerk for the Louisiana Fifth Circuit.

this writ application was pending, on September 11, 2007, Sam apparently filed another writ application seeking review of the trial court's refusal to set a return date.[34]  The Louisiana Fifth Circuit granted the application in part for the sole purpose of vacating the trial court's August 16, 2007 order to allow a return date to be set.[35]  The trial court later set a return date of November 5, 2007.[36]

On October 29, 2007, the Louisiana Fifth Circuit issued its opinion addressing Sam's other pending writ application, filed August 30, 2007, seeking review of the June 1, 2007 denial of his post-conviction claims.[37]  The court held that it would not reconsider its two prior decisions regarding the trial court's refusal to require an opposition from the State.  The court also determined that Sam had altered the legal basis for his second claim, alleging denial of due process and equal protection, to base the claim instead on alleged malicious, vindictive and selective prosecution.  The court determined that because this was different from the legal basis presented to the trial court, the claim was not properly before it for review.  The court also affirmed the denial of relief on subparts b, c, d, and g of Sam's ineffective assistance of counsel claim as

---

[34]The record does not contain a file stamped copy of this writ application.  The filing date appears on the face of the court's order and has been confirmed by a member of the court's staff with the office of the clerk for the Louisiana Fifth Circuit.

[35]St. Rec. Vol. 3 of 12, 5th Cir. Order, 07-KH-709, 10/2/07.

[36]St. Rec. Vol. 3 of 12, Trial Court Order, 10/5/07.

[37]St. Rec. Vol. 3 of 12, 5th Cir. Order, 07-KH-662, 10/29/07.

12

meritless. Finally, the court remanded to the trial court subparts a, e, and f of the ineffective assistance of counsel claim, finding that the trial court erred when it did not address those claims on the merits.

On October 30, 2007, Sam filed another writ application with the Louisiana Fifth Circuit, apparently in response to the return date set by the trial court at the direction of the Louisiana Fifth Circuit.[38]   The Louisiana Fifth Circuit eventually denied the application on November 28, 2007, as repetitive and duplicative.[39]

In the meantime, the state trial court ordered briefing from the State on the three remanded ineffective assistance claims.[40]  While this was pending, Sam also filed a writ application with the Louisiana Supreme Court on December 28, 2007, seeking review of the Louisiana Fifth Circuit's October 29, 2007, order affirming the trial court's June 1, 2007, denial of relief on Sam's first application for post-conviction relief.[41]

On January 10, 2008, after receipt of the State's opposition, the state trial court denied relief on the three remanded ineffective assistance of counsel claims, finding no

---

[38]The record does not contain a file stamped copy of this writ application.  The filing date appears on the face of the court's order and has been confirmed by a member of the court's staff with the office of the clerk for the Louisiana Fifth Circuit.

[39]St. Rec. Vol. 3 of 12, 07-KH-861, 11/28/07.

[40]St. Rec. Vol. 3 of 12, Trial Court Order, 11/2/07.

[41]St. Rec. Vol. 3 of 12, La. S. Ct. Letter, 2007-KH-2492, 12/28/07 (postal meter 11/26/07); St. Rec. Vol. 11 of 12, La. S. Ct. Writ Application, 2007-KH-2492, 12/28/07 (signed 11/26/07).

merit under the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).[42]
The court also considered Sam's untimely filed rebuttal to the State's opposition and
declined to alter its ruling.[43]

The Louisiana Fifth Circuit denied Sam's subsequent writ application on April 22,
2008, finding no merit to his claims and declining to consider the "remaining
subclaims"[44] under La. Code Crim. P. art. 930.4(E) because they had not been previously
raised.[45]  Sam did not seek further review of this ruling.

In the meantime, on April 15, 2008, Sam filed a second application for post-
conviction relief in the state trial court, alleging that he was denied effective assistance
of counsel and due process because counsel failed to raise prosecutorial misconduct,
which denied him a fair and impartial trial as a result of malicious, vindictive and
selective prosecution.[46]  The state trial court denied relief on June 5, 2008, finding the

---

[42]St. Rec. Vol. 3 of 12, Trial Court Order, 1/10/08; State's Response, 12/20/07.

[43]St. Rec. Vol. 4 of 12, Rebuttal to the State's Response, 1/11/08; Trial Court Order, 1/23/08.

[44]The court did not delineate what it considered to be these other subclaims.

[45]St. Rec. Vol. 4 of 12, 5th Cir. Order, 08-KH-179, 4/22/08; St. Rec. Vol. 12 of 12, 5th Cir. Writ
Application, 08-KH-179, 2/26/08 (postmarked 2/12/08).

[46]St. Rec. Vol. 4 of 12, Uniform Application for Post-Conviction Relief, 4/15/08 (dated 4/10/08).

claims repetitive and the petition impermissibly successive under La. Code Crim. P. art. 930.4.[47]

The Louisiana Fifth Circuit denied Sam's subsequent writ application to that court, finding that Sam's second application for post-conviction relief was barred from review as untimely filed under La. Code Crim. P. art. 930.8.[48]  Sam did not seek further review of this order.

Instead, on August 12, 2008, he submitted a writ application, which was filed in the Louisiana Supreme Court on September 24, 2008, seeking reconsideration of his prior pro se writ applications to the Louisiana Fifth Circuit under the holding in State v. Cordero, 993 So.2d 203 (La. 2008).[49]  Per the Cordero procedures, this writ application was transferred to the Louisiana Fifth Circuit.[50]

---

[47]St. Rec. Vol. 4 of 12, Trial Court Order, 6/5/08.

[48]St. Rec. Vol. 4 of 12, 5th Cir. Order, 08-KH-588, 7/31/08.  The court also previously denied Sam's application for writ of mandamus as moot because the trial court had ruled on his second application for post-conviction relief.  St. Rec. Vol. 4 of 12, 5th Cir. Order, 08-KH-482, 6/24/08.

[49]St. Rec. Vol. 8 of 8, 08-KH-2326, 9/24/08 (postmarked 8/12/08, dated 8/9/08).  The Cordero court addressed the alleged procedural improprieties and summary dismissal without judicial review of pro se post-conviction writ applications filed in that court over a period of time.

[50]State ex rel. Sam v. State, 993 So.2d 1264 (La. 2008); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2008-KH-2326, 10/10/08.  The Cordero court directed that writs with questionable review history be transferred to the Louisiana Fifth Circuit for reconsideration.

Two months later, on October 10, 2008, the Louisiana Supreme Court denied Sam's prior writ application, submitted December 28, 2007, in which he was seeking review of the denial of relief on his first application for post-conviction relief.[51]

On November 24, 2008, Sam submitted another application for post-conviction relief to the state trial court in which he asserted the following claims:[52] (1) The conviction was obtained by use of a confession coerced from the confidential informant. (2) His conviction was obtained by use of evidence obtained from an unconstitutional search and seizure, where the police officer's testimony was inconsistent and he violated federal law by digging into petitioner's pocket to locate the cocaine seized. (3) His conviction was obtained by use of evidence obtained during an illegal arrest where there was no probable cause for the stop. (4) He was denied effective assistance of counsel. The record does not contain any resolution of this application.

On February 13, 2009, the Louisiana Fifth Circuit denied relief on Sam's <u>Cordero</u> review of his prior pro se writ applications.[53] Sam thereafter submitted an application seeking review of that ruling in the Louisiana Supreme Court on March 8, 2009.[54] The

---

[51]<u>State ex rel. Sam v. State</u>, 993 So.2d 1276 (La. 2008); St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2007-KH-2492, 10/10/08.

[52]St. Rec. Vol. 4 of 8, Uniform Application for Post Conviction Relief, 12/12/08 (dated 11/24/08).

[53]St. Rec. Vol. 11 of 12, 5th Cir. Order, 08-WR-897, 2/13/09.

[54]St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 09-KH-700, 3/27/09 (postmarked 3/8/09, dated 3/12/09).

Louisiana Supreme Court denied the application without stated reasons on January 29, 2010.[55]

II.   <u>FEDERAL HABEAS PETITION</u>[56]

On March 30, 2010, the clerk of this court filed Sam's current petition for federal habeas corpus relief, arguing that he was denied a full and fair hearing under due process and equal protection on his Fourth Amendment claims challenging his stop, arrest and the seizure of evidence.[57]   Specifically, Sam argues the following: (1) He was denied a full and fair hearing in the state courts on his challenge to the stop which led to his arrest and the arrest itself. (2) The State's information received from the confidential informant should have been suppressed as unreliable and coerced, making the seized narcotics "fruit of the poisonous tree" which could not be used at trial.   He argues that in his efforts to seek review of these claims, he was further denied due process under the procedures

---

[55]<u>State ex rel. Sam v. State</u>, 25 So.3d 823 (La. 2010); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2009-KH-0700, 1/29/10.

[56]Although Sam has filed three prior habeas petitions in this court, Civ. Action Nos. 03-3122"I"(2) (§ 2241), 06-2963"I"(2) (§ 2254), and 08-5064"I"(2) (§ 2254), the instant petition is not a prohibited second or successive petition.   An adjudication on the merits is necessary before a subsequent petition is considered "second or successive."   <u>In re Cain</u>, 137 F.3d 234, 235 (5th Cir. 1998); <u>see</u> <u>Barrientes v. Johnson</u>, 221 F.3d 741 (5th Cir. 2000) (citing <u>Slack v. McDaniel</u>, 529 U.S. 473 (2000)(subsequent filing not successive when prior filing was dismissed without prejudice)); <u>Graham v. Johnson</u>, 168 F.3d 762 (5th Cir. 1999) ("Under current law, however, it is clear that an application <u>filed</u> <u>after a previous application was fully adjudicated on the merits</u> is a second or successive application . . ." (emphasis added)). Sam's prior petitions were dismissed without prejudice for failure to exhaust without adjudication on the merits. The prohibition against second or successive petitions also does not apply to habeas petitions brought under § 2241.  <u>See</u>, <u>Felker v. Turpin</u>, 518 U.S. 651, 662-663 (1996); <u>Barapind v. Reno</u>, 225 F.3d 1100, 1111 (9th Cir. 2000).

[57]Rec. Doc. No. 3.

in place at the time in the Louisiana Fifth Circuit Court of Appeal addressed to the Louisiana Supreme Court in Cordero, 993 So.2d at 203.

The State has filed a response in opposition to Sam's petition.[58] The State argues that Sam's claim that he was denied a fair hearing under Cordero is now moot. The State contends that, because his prior state writ application was reconsidered in accordance with the Louisiana Supreme court's procedure outlined in Cordero, his request for such review is now moot and should be dismissed.

The State further argues that Sam's claims arising from Cordero do not present a federal question. The State contends that, because Sam has no right to a post-conviction process, any irregularities in that process do not state a claim for federal habeas corpus relief. The State further contends that Sam is without standing to raise these same claims on behalf of other pro se litigants affected by the issues in Cordero.

The State also argues that, to the extent Sam intends to challenge the denial of his motion to suppress, his claims are barred from federal habeas review under Stone v. Powell, 428 U.S. 465 (1976), since he did in fact receive a full review of his Fourth Amendment claims in the state courts. The State further suggests that Sam has not exhausted state court remedies as to the Cordero claim, as was argued in the prior habeas petition in Civ. Action No. 08-5064"I"(2).

---

[58]Rec. Doc. No. 14.

In his response to the State's opposition, Sam concedes that his claims here are duplicative of claims raised in his prior proceeding.[59]  He contends, however, that his claims are ripe for review by this court since he repeatedly has been denied a fair hearing by the State and this court is his only chance for review of his Fourth Amendment claims. He suggests that the claims have now been exhausted based on all of his prior efforts in the state courts.  He also reiterates his arguments in support of his Fourth Amendment claims and his challenge to the reliability of the confidential informant.

III.    GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[60] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Sam's petition, which, for reasons discussed below, is deemed filed in a federal court on February 18, 2010.[61]

---

[59]Rec. Doc. No. 15.

[60]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[61]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Sam's petition was filed by the

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State alleges that Sam has failed to exhaust state court remedies as to the Cordero issue.  Sam, however, argues in his petition that he has now exhausted that issue, and he refers the court to the latest orders from the Louisiana Supreme Court, cited in the procedural history above, in which his Cordero issue was resolved.  As noted in this court's previous order, it appears that Sam has exhausted the issues presently before this court.[62]  Nevertheless, even if some portion of the claims are not fully exhausted, because the court finds the claim to be without merit, the claims can be addressed without requiring further exhaustion efforts.  28 U.S.C. § 2254(b)(2).

_____

clerk of court on April 5, 2010, when the filing fee was paid.  Sam dated his signature on the petition on February 18, 2010, which I consider the earliest date he could have submitted it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin v. Lensing, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate did not pay the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

[62]See Rec. Doc. No. 16.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    FULL AND FAIR HEARING ON FOURTH AMENDMENT CLAIMS

Sam alleges that he did not receive a full and fair hearing on his Fourth

Amendment claims.  He identifies those claims as his arguments that the information

received from the confidential informant should have been suppressed as unreliable and coerced, making the seized narcotics "fruit of the poisonous tree" which could not be used at trial.  He argues that the state courts failed to provide him with a hearing on or full consideration of these particular arguments to further establish that the evidence against him should have been suppressed.  Construed broadly, he asserts that this federal court should consider the merits of his claim because the Stone v. Powell bar to such review is not appropriate in this case.

As recognized by Sam and the State, Fourth Amendment violations are generally not cognizable on federal habeas review.  Stone v. Powell, 428 U.S. 465 (1976).  In Stone v. Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial." (footnotes omitted) Id., at 494.  A "full and fair" hearing as contemplated by Stone refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court.  Davis v. Blackburn, 803 F.2d 807, 808 (5th Cir.1986); O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977).

The United States Court of Appeals for the Fifth Circuit has interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity."  Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978); Janecka v. Cockrell, 301 F.3d 316, 320

(5th Cir. 2002), cert. denied, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." Caver, at 1192.

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the Stone v. Powell prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. Janecka, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the Stone v. Powell bar to apply. Id., at 320. The Fifth Circuit has also held that the Stone v. Powell bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. Swicegood v. Alabama, 577 F.2d 1322, 1324-1325 (5th Cir. 1978). "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of Caver dictates that Swicegood's application of Stone despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." Williams v. Brown, 609 F.2d 216, 220 (5th Cir. 1980); see also, Janecka, 301 F.3d at 321 (same).

To obtain post-conviction relief in federal court, a habeas petitioner must plead and prove that the state court proceeding was inadequate.  Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir. 1986).  Sam does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims.[63]

Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  Bailey v. Cain, No. 06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting referenced Report and Recommendation).  The record in this case demonstrates that Sam had several opportunities to litigate his challenges and was in fact provided review of his properly raised Fourth Amendment claims.

Sam's counsel filed a motion to suppress, which was the subject of a full pretrial suppression hearing at the trial court level, a pro se-filed pretrial writ application to the appellate court, and a pro se-filed pretrial writ application to the Louisiana Supreme Court, although each of these were unsuccessful.  Sam's appellate counsel also questioned the denial of the motion to suppress on direct appeal to no avail.  The issue was also unsuccessfully presented again to the Louisiana Supreme Court on review of

---

[63]I will discuss his allegation that he was denied due process in general by the Louisiana Fifth Circuit under his "Cordero claim" later in this report.

the direct appeal.  Although these attempts were unsuccessful, Sam was provided with full review.

Sam then raised his other Fourth Amendment claims, that the evidence should have been suppressed based on the false testimony and the unreliability and coercion of the confidential informant, on his application for post-conviction relief in the state trial court.  As outlined above, the state trial court denied that claim as repetitive of issues raised on direct appeal.  The Louisiana Fifth Circuit declined to review the claim again, finding that Sam changed the basis for the claim from that presented to the trial court in the post-conviction application.  He submitted the claim again to the Louisiana Supreme Court, and that court also denied relief without stated reasons.

The record demonstrates that Sam was provided with ample opportunity to present his claims, although his efforts were unsuccessful and perhaps procedurally faulty.  The state courts were not required by the Constitution to conduct in-court hearings on his Fourth Amendment claims for due process standards to have been met.  The state courts considered and reviewed his arguments on direct appeal and denied relief based on the merits of the claims raised.  The courts also denied relief based on Sam's procedurally improper presentation of the claims on post-conviction review.  The review at all levels was sufficient to meet due process requirements.  See Woodard v. Thaler, 702 F. Supp.2d 738, 759 (S.D. Tex. 2010) (state courts' finding that Fourth Amendment claim was procedurally barred did not undermine the "opportunity for full and fair litigation.");

Williams, 609 F.2d at 220.  Sam's suggestion that the review he in fact received of his Fourth Amendment claims violated his due process and equal protection rights is without merit.

For these reasons, the state courts' denial of relief on Sam's claim that he was denied a full and fair hearing on his Fourth Amendment claims was not contrary to, or an unreasonable application of, Supreme Court law.

Thus, to the extent he seeks to have this federal habeas court review his Fourth Amendment claims, he is not entitled to relief.  Because he received an opportunity for a full and fair hearing in the state courts, Stone v. Powell bars consideration of Sam's Fourth Amendment claims here.  Sam is not entitled to relief.

## VI.   DENIAL OF DUE PROCESS ("THE CORDERO CLAIM")

Broadly construing his written submissions, Sam may be arguing that he was denied due process because the Louisiana Fifth Circuit failed to provide him with proper review as addressed in Cordero, 993 So.2d at 203.[64]  As noted above, in Cordero, the Louisiana Supreme Court addressed allegations of procedural improprieties in the processing, and summary dismissals without judicial review of, pro se post-conviction writ applications filed in the Louisiana Fifth Circuit between February 8, 1994 and May 21, 2007.  In its ruling, the court recognized that, in an effort to remedy the concerns, the

---

[64]St. Rec. Vol. 8 of 8, 08-KH-2326, 9/24/08 (postmarked 8/12/08, dated 8/9/08).

Louisiana Fifth Circuit Court of Appeal had unanimously adopted an en banc resolution in which it asked the Louisiana Supreme Court to consider remanding the pro se post-conviction writ applications addressed during that period with direction that they be assigned to random three-judge panels.  Cordero, 993 So.2d at 206.  The Louisiana Supreme Court adopted the court of appeal's resolution.  Cordero, 993 So.2d at 205.  The court directed that writ applications with questionable review history during that period of time would be transferred to the Louisiana Fifth Circuit for full reconsideration.

In this case, Sam sought this same kind of relief in his 2008 application to the Louisiana Supreme Court.[65]  Sam specifically sought reconsideration under Cordero of the Louisiana Fifth Circuit's ruling in his pretrial pro se writ application No. 03-KH-726. In that prior application, Sam had sought pretrial review of the trial court's denial of the motion to suppress.  The Louisiana Fifth Circuit denied the application on July 9, 2003, stating, "Relator has an adequate remedy on appeal, if necessary."[66]  Although the referenced application was not listed in Cordero, and it was a pretrial writ application not of the same nature as the post-conviction applications discussed in Cordero, the Louisiana Supreme Court referred the matter to the Louisiana Fifth Circuit for review.[67]

_____

[65]State ex rel. Sam v. State, 993 So.2d at 1276; St. Rec. Vol. 11 of 12, La. S. Ct. Order, 2007-KH-2492, 10/10/08.

[66]St. Rec. Vol. 1 of 12, 5th Cir. Order, 03-KH-726, 7/9/03.

[67]Sam's 2008 post-conviction writ application, No. 08-KH-2326, was listed in Cordero but that was not the case for which he sought review.

See Severin v. Parish of Jefferson, 357 Fed. Appx. 601, 603 (5th Cir. Dec. 16, 2009) (recognizing that the policy at issue in Cordero was related to review of pro se prisoner post-conviction writs.)

In its follow-up review, the Louisiana Fifth Circuit found no error in its prior ruling, and it again resolved that the proper remedy was for Sam to have pursued his relief on direct appeal.[68]  The appellate court further noted that it had also reviewed the denial of the motion to suppress on direct appeal and found no error in the trial court's ruling.[69]  The Louisiana Supreme Court denied Sam's application for review of this order.[70]

Sam has not demonstrated that he was denied a fair hearing as a result of the pretrial ruling from the Louisiana Fifth Circuit.  As discussed above, Sam had several opportunities to present his Fourth Amendment claims to the state courts for review on appeal and on post-conviction review.  The ruling by the Louisiana Fifth Circuit in 2003 also was not in error and instead simply advised Sam of his opportunity for proper review of the denial of the motion to suppress on appeal, review which his counsel in fact pursued and received.

---

[68]St. Rec. Vol. 8 of 8, 5th Cir. Order, 08-WR-897, 2/13/09.

[69]The Court also reviewed another unrelated pro se-filed pretrial writ application from Sam in which he sought access to the prison library. That application was denied on June 1, 2004, as outside the scope of the court's supervisory jurisdiction. The court again resolved that it's ruling was not in error.

[70]State ex rel. Sam v. State, 25 So.3d at 823; St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2009-KH-0700, 1/29/10.

In addition, even if there was some procedural error in the consideration of his 2003 pretrial writ application by the Louisiana Fifth Circuit, that error would not void the application of <u>Stone</u> to his claims by this court.  <u>Swicegood</u>, 577 F.2d at 1324-1325; <u>Williams</u>, 609 F.2d at 220; <u>Janecka</u>, 301 F.3d at 321.  The system of review addressed and approved by the Louisiana Supreme Court in <u>Cordero</u> did not prevent Sam from fully and fairly litigating his Fourth Amendment claims.  As addressed above, Sam was provided ample opportunity to present his Fourth Amendment claims for proper review.  Those opportunities complied with due process requirements.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law.  Sam is not entitled to relief on this claim.

## **RECOMMENDATION**

It is **RECOMMENDED** that Joseph Sam's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[71]

New Orleans, Louisiana, this _____25th_____ day of March, 2011.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[71]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.